MENASHI, *Circuit Judge*, dissenting:

When the U.S. District Court for the Southern District of New York requested that the U.S. Attorney prosecute Steven Donziger for contempt, the U.S. Attorney "respectfully decline[d]." App'x 59. In response to that exercise of prosecutorial discretion, the district court appointed three private attorneys "to prosecute Steven Donziger on the charges of criminal contempt." *Id.* These judicially appointed prosecutors eventually secured a conviction against Donziger and a sentence of six months' imprisonment.

This is not how defendants are prosecuted in a system of separated powers. In our constitutional framework, "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974). In this case, however, the district court made that decision by appointing its own prosecutors. Moreover, any officer exercising the executive power—as all parties now acknowledge the special prosecutors to be—must be appointed consistent with the Appointments Clause. That clause requires appointment by the President and confirmation by the Senate unless "Congress … by Law" vests the appointment of certain inferior officers in the courts, the heads of the departments, or the President alone. U.S. CONST. art. II, § 2, cl. 2. In this case, the district court appointed the special prosecutors, but Congress never authorized it to do so.

Thirty-five years ago, the Supreme Court suggested that Article III created an exception to normal separation-of-powers principles when a district court appoints private lawyers as special prosecutors for criminal contempt proceedings. In *Young v. United*

*States ex rel. Vuitton et Fils S.A.*, the Court said that the power to initiate a prosecution followed from the judiciary's "inherent power of self-protection," so that a court would not be "completely dependent on the Executive Branch to redress direct affronts to its authority." 481 U.S. 787, 801 (1987). For that reason, *Young* said, the power to initiate "contempt proceedings to punish disobedience to court orders" was "a part of the judicial function." *Id.* at 795.

No one involved in this case has treated the prosecution of Donziger as an exercise of inherent judicial authority. Every court and every party in these proceedings agrees that the special prosecutors exercised executive power. The court acknowledges that special prosecutors are officers of the United States and "exercise the sovereign power of the United States." *Ante* at 8-9 (internal quotation marks omitted). The special prosecutors themselves admit that they exercise a "form of executive power."[1] And Donziger, the special prosecutors, and the court all conclude that the prosecution could have been ended by the Attorney General. *See ante* at 23-24; Reply Br. 24; Appellee's Br. 38.

Despite this agreement that, as the court understatedly puts it, "*Young* is in some tension with the Court's more recent Appointments Clause and separation-of-powers jurisprudence," *ante* at 26, the court attempts to reconcile that jurisprudence with *Young*. According to the court, *Young* held that the judiciary has the inherent power only to *initiate* a prosecution and left to the executive branch the power to terminate that prosecution at any time. *Id.* at 22-24. In other words, although *Young* purported to provide the judiciary a "means to vindicate its own authority without complete dependence on other

---

[1] Oral Argument Audio Recording at 38:00.

Branches," all it did was authorize a district court to appoint a prosecutor who could be immediately fired by the executive branch. *Young*, 481 U.S. at 796. That is not the "power of self-protection" the *Young* Court had in mind. *Id.* at 801.

I agree with the part of the court's opinion holding that even a judicially appointed special prosecutor is an executive officer performing an executive function. For that reason, I would acknowledge that the appointment of such a prosecutor cannot be justified by inherent judicial authority but must be consistent with the Appointments Clause. Because the appointments in this case were not made in compliance with the Appointments Clause, I would hold that the appointments of the special prosecutors—and the subsequent prosecution, conviction, and sentencing of Donziger—are void. I would reverse the judgment of the district court and vacate Donziger's conviction.

Prosecution is an aspect of the executive power, and the executive power, "all of it," belongs to the executive branch. *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020). The district court exercised that power in this case, and therefore its judgment cannot stand. Accordingly, I dissent.

# I

The court relies on the plain error doctrine to avoid squarely addressing whether the prosecution of Donziger was unconstitutional. According to the court, Donziger failed to argue before the district court that the appointments of the prosecutors were unconstitutional, and therefore plain error review applies. Thus, even though the prosecution *might* have been unconstitutional, because it

was not *plainly* so, the court holds that we must affirm Donziger's conviction. I disagree.

**A**

First, plain error review does not apply because Donziger raised his challenge to the appointments of the special prosecutors repeatedly before the district court. In his pretrial motion to dismiss the contempt charge, Donziger argued that "judges invoking criminal contempt must exercise utmost restraint," that Justice Scalia "strenuously argued that federal judges themselves have no … power to appoint an attorney to conduct contempt prosecutions," and that "[t]he circumstances of Steven Donziger's criminal case validate … Justice Scalia's[] … concerns about abuse of the contempt power." Pretrial Motion to Dismiss at 6-7, *United States v. Donziger*, No. 19-CR-561, 2021 WL 3141893 (S.D.N.Y. July 26, 2021), ECF No. 60. During the trial, Donziger filed another motion to dismiss challenging the appointments of the special prosecutors because the prosecutors were "acting without any acknowledged [e]xecutive branch supervisory authority" and yet "have not been appointed by the President with the advice and consent of the Senate." Motion to Dismiss at 3, *Donziger*, 2021 WL 3141893, ECF No. 302. After the trial, Donziger again sought dismissal of the case because "the appointment of Ms. Glavin," the lead special prosecutor, "was unconstitutional." Motion to Dismiss at 1, *Donziger*, 2021 WL 3141893, ECF No. 330. The district court responded to Donziger's arguments by holding that the appointments of the special prosecutors pursuant to Federal Rule of

Criminal Procedure 42 was consistent with the Appointments Clause.[2]

Donziger was so persistent in raising his Appointments Clause challenge that he exasperated the district court. *See, e.g.*, *Donziger*, 2021 WL 3141893, at *53 ("Undeterred, Mr. Donziger filed a second post-trial letter motion to dismiss the contempt charges on Appointments Clause grounds."). Nevertheless, the court determines that he "did not make this argument below." *Ante* at 24. According to the court, it was not enough for Donziger to preserve the issue to contend that the appointments of the special prosecutors violated the Appointments Clause. Instead, Donziger needed specifically to argue that Rule 42 "did not satisfy the Appointments Clause requirement that 'Congress … by law vest the Appointment.'" *Id.* at 24 (quoting U.S. CONST. art. II, § 2, cl. 2). But Donziger had no reason to frame his Appointments Clause challenge in this way before the district court. Donziger argued to the district court that the special prosecutor was unsupervised and therefore was *not* acting as an inferior officer who could assume office without appointment by the President and confirmation by the Senate. Only after the district court rejected that argument—and held that the special prosecutor was an inferior officer and could properly be appointed by a district court pursuant to Rule 42, *see supra* note 2—did it make sense for Donziger to present

---

[2] *See Donziger*, 2021 WL 3141893, at *54 ("Unlike principal officers, inferior officers Congress may allow to be appointed by the President alone, by the heads of departments, or by the Judiciary. That is precisely what happened in this case. Federal Rule of Criminal Procedure 42 ('Rule 42') authorized—in fact, mandated—Judge Kaplan to appoint an attorney to prosecute the criminal contempt charges against Mr. Donziger.") (internal quotation marks, alteration, and footnote omitted).

the argument that Rule 42 does not authorize a district court to appoint an inferior officer under the Appointments Clause.[3]

The court recognizes that the district court's holding with respect to Rule 42 is questionable. *See ante* at 26 (noting that "we might ultimately conclude that the appointment of a special prosecutor under Rule 42 violates the Appointments Clause"). But the court refuses to consider Donziger's challenge to that holding on the merits because Donziger failed to make a specific argument against that holding before the holding was ever issued.

That does not make sense. The "well-established general rule" is that "an appellate court will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). In this case, Donziger repeatedly raised the issue of the Appointments Clause before the district court, and the district court addressed it. I would hold that Donziger thereby preserved the issue and that we should consider his appeal on the merits. Because "this appeal turns on a pure question of law," the standard of review is *de novo* rather than plain error. *Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 778 (2d Cir. 2013).

---

[3] The court insists that "Donziger never argued that the special prosecutors were principal officers who should have been appointed by the President and confirmed by the Senate." *Ante* at 24-25 n.14. But Donziger's argument that the special prosecutors' appointments were unconstitutional because they lacked "supervision by the Department of Justice" *was* an argument that the special prosecutors were acting as principal officers despite not having "been appointed by the President with the advice and consent of the Senate." Motion to Dismiss at 3, *Donziger*, 2021 WL 3141893, ECF No. 302.

**B**

Second, even if Donziger had to show plain error, I would conclude that he satisfies that standard. We find plain error when "(1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Nouri*, 711 F.3d 129, 138 (2d Cir. 2013) (internal quotation marks and alterations omitted). I do not understand the court to argue that the constitutional violation Donziger alleges did not affect his "substantial rights" or seriously affect the "fairness, integrity or public reputation of judicial proceedings." *Id.* It clearly did both. Donziger was sentenced to six months' imprisonment following a prosecution he claims should not have been permitted at all.

To avoid deciding whether the appointments of the special prosecutors were unconstitutional, the court holds that any error by the district court is not "plain." *Ante* at 25-26. An error is plain if it is "clear" or "obvious." *United States v. Olano*, 507 U.S. 725, 734 (1993). We do not determine the plainness of an error according to how understandable it was for the district court to have erred. Plain error is assessed "at the time of appellate consideration," *Johnson v. United States*, 520 U.S. 461, 468 (1997), and we find plain error even when the error would not have been "clear" or "obvious" before the district court at the time of its decision. *See, e.g.*, *United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019) (holding that the district court committed plain error based on a Supreme Court decision published after the district court's judgment).

7

The court maintains that the district court's alleged error is not clear enough because the district court was following *Young* when it held that the appointments were valid. In particular, the court refers to the principle that if "a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Ante* at 26 (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). The court's application of this principle suggests not merely that the district court did not *plainly* err but that the district court did not err *at all*. If the court thinks that the *Agostini* principle requires continued adherence to *Young*, it should say so. But the court avoids saying that directly because it would contradict what the court holds in the first part of its opinion.

No court that believes what the majority says about the authority of the special prosecutors in this case could conclude that *Young* justifies their appointments. Until this case, no court of appeals had ever held that a special prosecutor was an executive officer who could nevertheless be judicially appointed consistent with the Appointments Clause. *Young* does not stand for that proposition. As Justice Scalia noted, "the power to appoint inferior federal officers" under the Appointments Clause was "irrelevant" to the Court's decision in *Young*, 481 U.S. at 815 (Scalia, J., concurring in the judgment), which rested instead on the courts' "inherent authority" under Article III, *id.* at 793 (majority opinion). Today, the court does not follow the "inherent authority" rationale of *Young* because it recognizes that doing so would be inconsistent with the Supreme Court's subsequent cases. Given that everyone in this case agrees that

the rationale of *Young* is untenable, reliance on that decision to excuse a violation of the Appointments Clause is plainly erroneous.

## II

According to the court, however, it was not plainly erroneous for the district court to appoint special prosecutors and initiate this prosecution following the U.S. Attorney's refusal to prosecute. Where did the district court get that power to appoint prosecutorial officers? Our government "is acknowledged by all to be one of enumerated powers," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 405 (1819), and the only enumerated powers that could justify the appointments in this case are the appointment power under the Appointments Clause or the "judicial Power" under Article III. *See* U.S. CONST. art. II, § 2; *id.* art. III, § 1. Neither of these provisions authorizes the appointments in this case.

### A

The Appointments Clause provides that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, … in the Courts of Law." *Id.* art II, § 2. The district court relied on Rule 42 to authorize the appointments of the special prosecutors. *Donziger*, 2021 WL 3141893, at *54. The Supreme Court amended Rule 42 in 2002 pursuant to its authority under the Rules Enabling Act "to prescribe general rules of practice and procedure and rules of evidence for cases" in the federal courts. 28 U.S.C. § 2072(a); *see Bank of N.S. v. United States*, 487 U.S. 250, 255 (1988). In accordance with the Act, the Court transmitted the amended Rule to Congress before it became effective. 28 U.S.C. § 2074. Because Congress did not pass a law to prevent the Rule from taking effect, the current version of Rule 42 became operative on December 1, 2002.

Today's opinion suggests that Rule 42 might be sufficient under the Appointments Clause to vest authority to appoint special prosecutors in the courts. *See ante* at 25-26. It is not. The Appointments Clause provides not only that the appointment power must be vested "by Law"; it also tells us *who* must vest that power: "Congress." U.S. CONST. art. II, § 2.[4] As Justice Scalia observed in *Young*, Rule 42 "could not confer Article II appointment authority, since it is a Rule of court rather than an enactment of Congress." *Young*, 481 U.S. at 816 n.1 (Scalia, J., concurring in the judgment). To be sure, by operation of the Rules Enabling Act, Rule 42 is "as binding as any statute duly enacted by Congress." *Bank of N.S.*, 487 U.S. at 255. But that does not mean Rule 42 *is* a statute duly enacted by Congress. The Rules Enabling Act provides only that a rule must be submitted to Congress at least seven months before it takes effect. *See* 28 U.S.C. § 2074(a). That notification provision—under which Congress normally does nothing at all—cannot transform the courts' adoption of Rule 42 into an instance of "Congress … by Law" vesting the appointment power in the courts.

---

[4] The same clause refers to federal offices that "shall be established by Law." U.S. CONST. art. II, § 2, cl. 2. Some justices have suggested that "Law" as used there might include sources of law other than statutes. *See United States v. Mouat*, 124 U.S. 303, 308 (1888) ("[N]either by the regulations, nor by the statutes, nor by any constitutional provision, is the present claimant an officer of the navy."); *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 539 (2010) (Breyer, J., dissenting) (arguing that the Supreme Court has defined inferior officers as "those who can be said to hold an office that has been created either by regulations or by statute") (internal quotation marks and citation omitted). But when the Constitution authorizes the vesting of the appointment power, it specifies that "*Congress* may by Law" do so. U.S. CONST. art. II, § 2, cl. 2 (emphasis added). Regardless of the scope of the term "Law," it is Congress that must do the vesting.

Given the court's purported adherence to *Young*, it is odd that the court argues the district court might have appointed the special prosecutors pursuant to the Appointments Clause. In *Young*, the Supreme Court did not rely on Rule 42 or any statute to conclude that the appointment was authorized. According to *Young*, the version of Rule 42 in effect at that time "d[id] not provide authorization for the appointment of a private attorney." 481 U.S. at 793. Rather, the Rule "sp[oke] only to the procedure for *providing notice* of criminal contempt." *Id.* at 794. Instead of relying on Rule 42 for authorization, the Supreme Court held that the authority to appoint a special prosecutor was inherent in the judicial power under Article III. *Id.* at 793. Thus, "[t]he Court in *Young* made clear that Rule 42 is rooted in an inherent judicial power that exists independently of the Rule." *United States v. Arpaio*, 906 F.3d 800, 803 (9th Cir. 2018) (W. Fletcher, J., concurring in the denial of rehearing en banc). If the court believes that *Young* justifies the district court's decision in this case, then its discussion of the Appointments Clause is beside the point.

### B

If the judicial appointment of a special prosecutor can be justified at all, it must be an exercise of inherent judicial authority. In *Young*, the Supreme Court held that the "inherent authority to initiate contempt proceedings for disobedience to their orders … necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." 481 U.S. at 793. The Court did more than simply assert that a court may appoint a special prosecutor. It provided the rationale for that authority and limited its exercise based on that rationale.

11

The Court emphasized that "the rationale for the appointment authority is necessity." *Id.* at 801. In particular, "[i]f the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution." *Id.* According to *Young*, "[c]ourts cannot be at the mercy of another Branch in deciding whether [contempt] proceedings should be initiated," and "[t]he ability to appoint a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection." *Id.* at 796.

That rationale for the appointment authority informed the limits *Young* put on its exercise. According to *Young*, "[w]hile a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that only the least possible power adequate to the end proposed should be used in contempt cases." *Id.* at 801 (internal quotation marks and alteration omitted). Based on that principle, the Court declared that "a court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied." *Id.* This instruction aimed to "ensure[] that the court will exercise its inherent power of self-protection only as a last resort." *Id.*

The rationale of *Young* shows why it cannot justify today's decision. The court purports to apply *Young* in upholding the appointment of the special prosecutor, but at the same time the court holds that the Attorney General may, in his discretion, remove the special prosecutor and end the prosecution. If the Attorney General has that authority, it would mean—despite the *Young* Court's repeated statements that the judiciary must have "a means to vindicate its own authority without complete dependence on other

12

Branches," *id.* at 796—that the Executive Branch can terminate a contempt proceeding at will. That ability would leave the courts "at the mercy of another Branch," *id.*, and the necessity of providing the courts an independent means to prosecute criminal contempt could not justify the appointment power.

The court's conception of the district court's appointment power renders that power not only ineffectual but strange. According to *Young* and Rule 42, the district court must request that the executive branch prosecute the contempt, and only after the executive branch declines may the district court appoint its own prosecutor. But today, the court holds that if the executive branch opposes the prosecution, it can end the prosecution immediately. In other words, the district court's "means to vindicate its own authority" is completely ineffective when the executive branch does not want the contempt prosecution to proceed. *Id.* at 796. The only circumstance in which the district court's appointment power will be useful, then, is when the executive branch actually *wants* to prosecute the contempt but declines to do so solely for lack of resources.[5]

It seems to me that if the inherent judicial authority to prosecute contempt is meant to protect the independence of the courts from the

---

[5] According to the court, the district court's appointment power is a meaningful independent power even if the executive branch can immediately remove the special prosecutor because "the judiciary could … respond by initiating a new prosecution and appointing another special prosecutor." *Ante* at 23 n.13. The new special prosecutor could then be fired by the executive branch, and the judiciary could respond by appointing yet another special prosecutor, who also could be fired, and around and around we would go. It is difficult to see how such a spectacle would empower a court to "vindicate its own authority without complete dependence on other Branches." *Young*, 481 U.S. at 796.

13

other branches, it should be strongest when the executive branch opposes the contempt prosecution. *Young* said the power to appoint would "vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience" and ensure that the judicial power does not become a "mere mockery." *Id.* (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450 (1911)). Today's decision transforms that ostensible "power of self-protection," *id.* at 801, into a subsidy for the executive branch. It allows the judicial appointment of additional executive branch prosecutors—paid out of the judiciary's budget[6]—when the U.S. Attorney's office does not want to devote its own resources to a case.[7]

The court's reliance on 28 U.S.C. § 516 further shows that it is not faithfully following *Young*. The statute provides that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States … is a party, … is reserved to officers of the Department of Justice, under the direction of the Attorney General." 28 U.S.C. § 516.[8] But the Supreme Court has already explained that "a fair

---

[6] *See Donziger*, 2021 WL 3141893, at *51 ("[T]he Special Prosecutors are paid for their work by the federal judiciary.").

[7] Providing judiciary-funded prosecutors to the executive branch creates tension with Congress's power of the purse. Congress has sought to protect its budgetary authority over executive agencies though the Antideficiency Act, which "is designed to keep governmental agencies operating within the limits of their appropriated funds." *Nat'l Fed'n of Fed. Emps. v. Devine*, 679 F.2d 907, 913 n.11 (D.C. Cir. 1981); *see* 31 U.S.C. § 1341(a)(1)(A). According to the court, however, the special prosecutors in this case could work for the Attorney General without drawing on the funds Congress appropriated to the Department of Justice.

[8] Section 519 contains similar language. *See* 28 U.S.C. § 519 ("*Except as otherwise authorized by law*, the Attorney General shall supervise all litigation

reading of *Young* indicates that a federal court's inherent authority to punish disobedience and vindicate its authority is an excepted provision or authorization within the meaning of §[] 516." *United States v. Providence J. Co.*, 485 U.S. 693, 704 (1988). In other words, the Supreme Court has said that the judicially initiated criminal contempt proceedings envisioned in *Young* are *not* "reserved to officers of the Department of Justice, under the direction of the Attorney General" because those proceedings are "otherwise authorized by law." 28 U.S.C. § 516.

The Court was correct to hold in *Providence Journal* that *Young* is incompatible with direction of the contempt proceeding by the Attorney General.[9] A court would have no authority to "punish acts of disobedience" if the contempt prosecution could proceed only at the pleasure and direction of the executive branch. *Young*, 481 U.S. at 796. The Court was clear in *Young* that "while the exercise of the contempt power is subject to reasonable regulation, the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered *practically inoperative*." *Id.* at 799 (internal quotation marks omitted) (emphasis added). If the court were correct that § 516 or another statute dictates that judicially appointed special prosecutors are removable at will by the executive branch, then under *Young* that statute would be unenforceable.

---

to which the United States … is a party, and shall direct all United States attorneys, assistant United States attorneys, and special attorneys appointed under section 543 of this title in the discharge of their respective duties.") (emphasis added).

[9] *See also Hollingsworth v. Perry*, 570 U.S. 693, 711 (2013) (noting that "special prosecutors appointed by federal courts to pursue contempt charges" are "subject to the ultimate authority of the court that appointed them").

In sum, the court's decision today does not faithfully apply *Young* but further proves that *Young* is no longer the law. And because *Young* is the only plausible basis the court provides for the appointment of the special prosecutor, that appointment was invalid.

### III

The violation of the Appointments Clause in this case is not a technicality. Every party and every court in these proceedings agrees that the Attorney General may remove the special prosecutor—despite the inconsistency of that conclusion with *Young*. That consensus confirms the obvious: criminal contempt prosecution is an executive function, and the special prosecutors exercise executive power.

"The prosecution of offenses against the United States is an executive function within the exclusive prerogative of the Attorney General." *United States v. Cox*, 342 F.2d 167, 190 (5th Cir. 1965) (Wisdom, J., concurring); *see also Morrison v. Olson*, 487 U.S. 654, 691 (1988) ("There is no real dispute that the functions performed by the independent counsel are 'executive' in the sense that they are law enforcement functions that typically have been undertaken by officials within the Executive Branch."). It is also undisputed where such power must reside. "Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law*, 140 S. Ct. at 2191 (quoting U.S. CONST. art. II, § 1, cl. 1).

That "power, in turn, generally includes the ability to remove executive officials." *Id.* at 2197. But we have consistently held for the same reason that "[t]he Executive … has the exclusive authority to decide *whether* to prosecute." *United States v. Huerta*, 878 F.2d 89, 92

(2d Cir. 1989) (emphasis added); *see also Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001) ("[C]ourts grant special deference to the executive branch in the performance of the 'core' executive function of deciding whether to prosecute."). I agree that the President and the Attorney General can remove a special prosecutor because without the removal power "the President could not be held fully accountable for discharging his own responsibilities," *Free Enter. Fund*, 561 U.S. at 514, which include the executive function of prosecution. But the initiation of a prosecution is as much an executive function as the conduct of a prosecution. There is no basis for holding that the executive branch must control one but not necessarily the other.[10]

---

[10] The court draws a sharp distinction between the appointment of the special prosecutors and the initiation of the prosecution against Donziger, insisting that it is only "the appointment of special prosecutors that is at issue," *ante* at 27, as if Donziger were not challenging his prosecution. The distinction is illusory. The district court appointed the special prosecutors specifically "*to prosecute* Steven Donziger on the charges of criminal contempt of court set forth in the Order to Show Cause," as the order of appointment makes clear. App'x 59 (emphasis added). *Young* similarly did not treat the initiation of a contempt proceeding as separate from the appointment of a prosecutor. The Supreme Court has explained that *Young* "recognized that federal courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, and this authority necessarily *includes* the ability to appoint a private attorney to prosecute the contempt." *Morrison*, 487 U.S. at 682 n.20 (emphasis added). At the same time, the court ignores the very real distinction between contempt proceedings that a court may initiate as an exercise of the Article III judicial power—that is, the common-law power to impose "sanctions for conduct that interfered with the orderly administration of judicial proceedings," *United States v. Dixon*, 509 U.S. 688, 694 (1993)—and the prosecution of criminal contempt charges by an executive officer, which even the court recognizes is an executive function. Federal courts have long "had power

The power "to initiate criminal investigations and prosecutions" is a "core executive power." *Seila Law*, 140 S. Ct. at 2200. That principle is well-settled. "[T]he decision of a prosecutor in the Executive Branch not to indict … has long been regarded as the special province of the Executive Branch." *Heckler v. Chaney*, 470 U.S. 821, 832 (1985). So uniquely executive is that power that we have said "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 138 (2d Cir. 2017) (quoting *United States v. Ross*, 719 F.2d 615, 620 (2d Cir. 1983)). In this case, the district court went beyond reviewing the executive branch's decision about instituting a prosecution. The district court appointed a prosecutor and instituted the prosecution itself. That was not a constitutional exercise of inherent judicial authority.

---

to 'inforce the observance of order,' but those 'implied powers' could not support common-law jurisdiction over criminal acts." *Id.* (quoting *United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 34 (1812)). The court points to *Young*'s statement that "the prosecution of in-court and out-of-court contempts … both proceed at the instigation of the court." *Ante* at 28 n.15 (quoting *Young*, 481 U.S. at 799). But this statement was based on *Young*'s observation that "[t]he fact that we have come to regard criminal contempt as a crime in the ordinary sense does not mean that any prosecution of contempt must now be considered an execution of the criminal law in which only the Executive Branch may engage." 481 U.S. at 799-800 (internal quotation marks and citation omitted). The court does not adhere to that understanding because it spends the first half of its opinion explaining that the special prosecutors must be "subject to the supervision of the Attorney General." *Ante* at 21.

*     *     *

In today's decision, the court attempts to reconcile *Young* with the constitutional separation of powers. It ends up following neither. The court's half-hearted adherence to *Young* on plain error review undermines that precedent by rendering ineffective the judicial power *Young* described as necessary. The court's split-the-baby approach to executive power—under which the executive must have the power to *oversee* a prosecution but the judiciary may decide to *initiate* one—undermines the constitutional principle that "[t]he entire 'executive Power' belongs to the President alone." *Seila Law*, 140 S. Ct. at 2197 (quoting U.S. CONST. art. II, § 1, cl. 1).

When the U.S. Attorney declined to prosecute Donziger, he did so as "an officer of the executive department." *Cox*, 342 F.2d at 171. "It follows, as an incident of the constitutional separation of powers, that the courts are not to interfere with the free exercise of the discretionary powers of the attorneys of the United States in their control over criminal prosecutions." *Id.* That is a straightforward conclusion, and it was plainly erroneous not to reach it. I would hold that the appointments of the special prosecutors were void, and I would vacate Donziger's conviction. Accordingly, I dissent.