21-2486
United States v. Donziger

# United States Court of Appeals
## for the Second Circuit

August Term, 2021

(Argued: November 30, 2021    Decided: June 22, 2022 )

Docket No. 21-2486

———————————————————

UNITED STATES OF AMERICA,

*Appellee,*

v.

STEVEN DONZIGER,

*Defendant-Appellant.*

———————————————————

Before:

PARK, NARDINI, and MENASHI, *Circuit Judges*.

Defendant-Appellant Steven Donziger was convicted of six counts of criminal contempt for repeatedly defying court orders, for which he was sentenced to six months' imprisonment. He challenges the conviction, arguing that the district court's appointment of special prosecutors under Federal Rule of Criminal Procedure 42(a)(2) violated the Appointments Clause of the United States Constitution because (1) the special prosecutors are inferior officers who were not supervised by a principal officer, and (2) Rule 42 does not satisfy the Appointments Clause requirement that "Congress . . . by Law" vest the appointment of inferior officers in the courts.

Before reaching Donziger's Appointments Clause challenges, we must determine whether special prosecutors are officers under the Appointments Clause. We conclude that they are because they wield federal prosecutorial power

and hold a position that is not personal to a specific individual and may last for years.  *Cf. Morrison v. Olson*, 487 U.S. 654 (1988).  We turn next to Donziger's Appointments Clause arguments and conclude that they lack merit.  First, the special prosecutors are subject to supervision by the Attorney General, who has broad statutory authority to "conduct" and to "supervise" all litigation involving the United States.  *See, e.g.*, 28 U.S.C. §§ 518(b), 519.  This authority includes supervising—and if necessary, removing—the special prosecutors.  Second, Donziger failed to raise his challenge to Rule 42 below, and we conclude that the district court did not commit plain error by appointing the special prosecutors in light of directly applicable Supreme Court precedent.  *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987).  Finally, we conclude that the district court did not abuse its discretion by initiating a prosecution against Donziger for repeatedly defying court orders for years.  We thus affirm Donziger's conviction.

Judge MENASHI dissents in a separate opinion.

> STEPHEN I. VLADECK, Austin, TX (William W. Taylor, III, David A. Reiser, Leila Bijan, Zuckerman Spaeder LLP, Washington, DC; Martin Garbus, Offit Kurman, New York, NY; Ronald L. Kuby, New York, NY; Natali Segovia, Water Protector Legal Collective, Albuquerque, NM, *on the brief*), *for Defendant-Appellant*.
>
> RITA M. GLAVIN, Glavin PLLC, New York, NY (Brian P. Maloney, Seward & Kissel LLP, New York, NY, *on the brief*), *for Appellee*.
>
> ROBERT A. PARKER (Kenneth A. Polite, Jr., Lisa H. Miller, *on the brief*), Criminal Division, Appellate Section, United States Department of Justice, Washington, DC, *for amicus curiae United States Department of Justice in support of Appellee*.

1    PARK, *Circuit Judge*:

2       Defendant-Appellant Steven Donziger was convicted of six counts of

3    criminal contempt for repeatedly defying court orders, for which he was sentenced

4    to six months' imprisonment.  He challenges the conviction, arguing that the

5    district court's appointment of special prosecutors under Federal Rule of Criminal

6    Procedure 42(a)(2) violated the Appointments Clause of the United States

7    Constitution because (1) the special prosecutors are inferior officers who were not

8    supervised by a principal officer, and (2) Rule 42 does not satisfy the

9    Appointments Clause requirement that "Congress . . . by Law" vest the

10   appointment of inferior officers in the courts.

11      Before reaching Donziger's Appointments Clause challenges, we must

12   determine whether special prosecutors are officers under the Appointments

13   Clause.  We conclude that they are because they wield federal prosecutorial power

14   and hold a position that is not personal to a specific individual and may last for

15   years.  *Cf. Morrison v. Olson*, 487 U.S. 654 (1988).  We turn next to Donziger's

16   Appointments Clause arguments and conclude that they lack merit.  First, the

17   special prosecutors are subject to supervision by the Attorney General, who has

18   broad statutory authority to "conduct" and to "supervise" all litigation involving

3

1    the United States.  *See, e.g.*, 28 U.S.C. §§ 518(b), 519.  This authority includes

2    supervising—and if necessary, removing—the special prosecutors.  Second,

3    Donziger failed to raise his challenge to Rule 42 below, and we conclude that the

4    district court did not commit plain error by appointing the special prosecutors in

5    light of directly applicable Supreme Court precedent.  *See Young v. United States ex*

6    *rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987).  Finally, we conclude that the district

7    court did not abuse its discretion by initiating a prosecution against Donziger for

8    repeatedly defying court orders for years.  We thus affirm Donziger's conviction.

9    ## I. BACKGROUND

10   A.    <u>Civil Contempt</u>

11   In 2014, the United States District Court for the Southern District of New

12   York found that Donziger, a New York lawyer, had engaged in fraud and

13   racketeering activity in order to obtain an $8.646 billion judgment against Chevron

14   Corporation in Ecuador.  *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 575–

15   603 (S.D.N.Y. 2014), *aff'd*, 833 F.3d 74 (2d Cir. 2016).  As part of the judgment, the

16   district court enjoined Donziger from enforcing the Ecuadorian judgment in the

17   United States or undertaking any acts to monetize or profit from it and ordered

18   Donziger to transfer and assign to Chevron any property that Donziger had

1   received or would receive that was traceable to the Ecuadorian judgment (the

2   "permanent injunctions"). In February 2018, the court issued a $813,602.71

3   judgment against Donziger.

4   A few months later, the court granted Chevron's motion to compel

5   Donziger's compliance with post-judgment discovery requests to identify assets

6   for enforcing the money judgment and to assess his compliance with the

7   permanent injunctions. Donziger refused to comply with the initial motion to

8   compel, a subsequent motion to compel, and finally, a Forensic Protocol Order

9   directing Donziger to surrender his electronic devices to a neutral forensic expert.

10  In May 2019, the court held Donziger in civil contempt for several violations of the

11  permanent injunctions and failure to comply with the Forensic Protocol Order. In

12  an effort to coerce compliance, the court imposed daily escalating fines on

13  Donziger and then ordered him to surrender his passports. Donziger did not pay

14  the fines or surrender his passports, and he continued to disobey the Forensic

15  Protocol Order.

16  B.   Criminal Contempt

17  On July 31, 2019, after several more months of Donziger's noncompliance

18  with court orders, the district court issued an order to show cause why he should

1 not be held in criminal contempt in violation of 18 U.S.C. § 401(3). Counts 1–3

2 charged Donziger with failure to comply with the Forensic Protocol Order and the

3 order to surrender his passports, and counts 4–6 charged him with violating the

4 permanent injunctions. The court referred Donziger's prosecution to the U.S.

5 Attorney for the Southern District of New York, who "respectfully decline[d] on

6 the ground that the matter would require resources that we do not readily have

7 available." App'x at 59 (alteration in original). The court thus appointed private

8 counsel as special prosecutors under Rule 42(a)(2).

9       On the first day of Donziger's criminal contempt trial, he moved to dismiss,

10 arguing that the prosecution violated the Appointments Clause because the

11 special prosecutors were inferior officers who lacked supervision by the

12 Department of Justice ("DOJ").[1] The court denied the motion in an oral ruling

13 after concluding that Donziger's "moving papers have given the Court absolutely

14 no basis on which to conclude that the special prosecutors are not subject to any

15 control or supervision whatsoever by the Executive Branch." App'x at 153.

---

[1] Donziger included an email from Acting Deputy Attorney General John P. Carlin to Donziger's attorneys stating, "The Department has received your letters in the Donziger matter. Having reviewed the letters, the Department declines to intervene in the federal-court initiated contempt proceedings." App'x at 156.

1    After trial but before the verdict, Donziger filed another motion to dismiss

2    again arguing that his prosecution violated the Appointments Clause because the

3    special prosecutors were unsupervised inferior officers.  On July 26, 2021, the court

4    issued its findings of fact and conclusions of law and found Donziger guilty on all

5    six counts.  In the decision, the court also denied Donziger's motion to dismiss,

6    finding that the motion was untimely and that nothing in Rule 42(a) prevented the

7    Attorney General from exercising supervision and review over the special

8    prosecutor.  Donziger moved for a new trial based on the same argument, and the

9    court again rejected it.

10    On October 1, 2021, Donziger was sentenced to six months' imprisonment,

11    and judgment was entered that day.  Donziger timely appealed.

12    **II.  DISCUSSION**

13    The Appointments Clause states that the President "shall nominate, and by

14    and with the Advice and Consent of the Senate, shall appoint . . . all other Officers

15    of the United States, whose Appointments are not herein otherwise provided for,

16    and which shall be established by Law: but the Congress may by Law vest the

17    Appointment of such inferior Officers, as they think proper, in the President alone,

18    in the Courts of Law, or in the Heads of Departments."  U.S. Const. art. II, § 2, cl. 2.

1    "The Appointments Clause prescribes the exclusive means of appointing

2    'Officers,'" *Lucia v. SEC*, 138 S. Ct. 2044, 2051 (2018), and it "is more than a matter

3    of 'etiquette or protocol'; it is among the significant structural safeguards of the

4    constitutional scheme," *Edmond v. United States*, 520 U.S. 651, 659 (1997) (quoting

5    *Buckley v. Valeo*, 424 U.S. 1, 125 (1976)).

6         Donziger argues that his prosecution was unconstitutional because the

7    special prosecutors are inferior officers who were unsupervised by a principal

8    officer and installed in violation of the Appointments Clause.  Before reaching

9    these arguments, we begin with the question whether the special prosecutors are

10   Officers of the United States at all.  "[W]e review questions of constitutional

11   interpretation *de novo*."  *United States v. Hester*, 589 F.3d 86, 90 (2d Cir. 2009).

12   A.    Special Prosecutors Are Officers Under the Appointments Clause

13        It is not obvious from the text of the Appointments Clause who qualifies as

14   an Officer of the United States, but the Supreme Court has provided sufficient

15   guidance in its Appointments Clause jurisprudence to decide this case.  To qualify

16   as an officer, an individual must (1) "exercis[e] significant authority pursuant to

17   the laws of the United States" and (2) "occupy a continuing position established

18   by law."  *Lucia*, 138 S. Ct. at 2051 (cleaned up).  It is undisputed that special

1    prosecutors meet the "significant authority" requirement because they "represent

2    the United States," *Young*, 481 U.S. at 804, and exercise the "sovereign power of

3    the United States," *United States v. Providence J. Co.*, 485 U.S. 693, 700 (1988).  We

4    conclude that special prosecutors also hold a "continuing position" and are thus

5    officers under the Appointments Clause.

6        1.    <u>Temporary Positions Can Be Offices</u>

7        The Supreme Court has long held that officers occupy a "continuing

8    position" established by law.  *See United States v. Germaine*, 99 U.S. 508, 511–12

9    (1878); *Auffmordt v. Hedden*, 137 U.S. 310, 327–28 (1890).  The Court's early

10   Appointments Clause cases held that to be an officer, one's duties had to be

11   "continuing and permanent, not occasional or temporary."  *Germaine*, 99 U.S. at

12   511–12; *see Auffmordt*, 137 U.S. at 327 (merchant appraiser not an officer because he

13   "acts only occasionally and temporarily").

14       More recently, the Court has indicated that "continuing position" does not

15   exclusively refer to permanent positions.  In *Morrison*, the Court said "[i]t is clear"

16   that an independent counsel is an officer even though the position terminates

17   when the counsel "has completed or substantially completed any investigations

18   or prosecutions undertaken pursuant to the [Ethics in Government] Act."  487 U.S.

1  at 664, 671 n.12; *see also Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*, 821 F.3d 19, 37–

2  38 (D.C. Cir. 2016) (holding that an arbitrator—appointed only if Amtrak and the

3  Federal Railway Administration have a certain type of dispute and whose sole

4  duty is to resolve that dispute—is an officer); *In re Grand Jury Investigation*, 916 F.3d

5  1047, 1052–53 (D.C. Cir. 2019) (holding that a special counsel is an inferior officer).

6  In short, an officer must occupy a position that is "continuing," and the Court has

7  held that a temporary position, like a special prosecutor, can satisfy this

8  requirement.[2]

9      Although *Morrison* made clear that a temporary position can be an office, it

10  did not directly address the "continuing position" requirement. Nor has the

11  Supreme Court explained how to determine what constitutes a sufficiently

12  "continuing position." *See, e.g.*, *Freytag v. Comm'r*, 501 U.S. 868, 881 (1991)

13  (acknowledging the "continuing position" requirement without elaborating);

14  *Lucia*, 138 S. Ct. at 2051–53 (same). We thus look to *Germaine* and *Auffmordt*, as well

15  as relevant authorities preceding those cases, for guidance on how to determine

---

[2] *See* Jennifer L. Mascott, *Who Are "Officers of the United States"?*, 70 Stan. L. Rev. 443, 534 (2018) (explaining that although the historical meaning of "officer" included the idea of "*ongoing* duties," "one did not necessarily need to be *continuously* employed or remunerated to qualify as an officer. . . . A number of the individuals receiving fees for services performed or for each day worked were considered officers by the First Congress.").

1    whether a particular temporary position is sufficiently "continuing" to constitute

2    an office.   These early cases generally discuss three factors that are helpful to

3    consider in determining whether a temporary position is an office: (1) the position

4    is not personal to a particular individual; (2) the position is not transient or fleeting;

5    and (3) the duties of the position are more than incidental.  *See Officers of the United*

6    *States Within the Meaning of the Appointments Clause*, 31 Op. O.L.C. 73, 112–13

7    (2007).  We apply these factors to conclude that the special prosecutors here are

8    officers.

9           First, to qualify as an office, the position must not depend on the identity of

10   the person occupying it, and the duties should "continue, though the person be

11   changed."[3]  *United States v. Maurice*, 26 F. Cas. 1211, 1214 (C.C.D. Va. 1823)*; see*

12   *United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 393 (1867) ("Vacating the office of

13   his superior would not have affected the tenure of his place.").  By contrast, "[a]

14   man may certainly be employed under a contract, express or implied, to do an act,

15   or perform a service, without becoming an officer" because the duties under the

---

[3] *See* James A. Heilpern, *Temporary Officers*, 26 Geo. Mason L. Rev. 753, 771 (2019) ("[A]t the time of the Founding, common law had defined the term *office* as 'an *institution* distinct from the person holding it.'  An office was said to be continuous whenever it was 'capable of persisting beyond an individual's incumbency.'" (brackets omitted) (quoting Edward S. Corwin, *The President: Office and Powers, 1787-1984*, at 70 (4th ed. 1957))).

1    contract are owed by that individual, who cannot simply be replaced by another.

2    *Maurice*, 26 F. Cas. at 1214.  Here, the special prosecutor positions are not specific

3    to the attorneys appointed to prosecute Donziger.  Indeed, the prosecution was

4    originally referred to the U.S. Attorney for the Southern District of New York, who

5    declined due to unavailability of resources.  Moreover, the individuals appointed

6    as special prosecutors could be replaced without the duties of the positions

7    terminating.

8         Second, the position must not be transient or fleeting.  *See Auffmordt*, 137

9    U.S. at 326–27 (holding that a merchant appraiser is not an officer because he had

10   no "employment which has any duration as to time"); *see also In re Oaths*, 20 Johns.

11   492, 493 (N.Y. 1823) ("Lexicographers generally define 'office' to mean '*public*

12   *employment*;' and I apprehend its legal meaning to be an employment on behalf of

13   the government, in any station or public trust, not merely *transient*, *occasional* or

14   *incidental*."); *State v. Kennon*, 7 Ohio St. 546, 556 (1857) (contrasting duties that are

15   "transient, occasional, or incidental" with those that are "durable, permanent, and

16   continuous").[4]  Here, the special prosecutors were appointed in July 2019 and have

---

[4] Although *In re Oaths* and *Kennon* were state court cases, they reflect a shared understanding of the characteristics of an office discussed in the few federal cases that addressed the issue.  *See also, e.g., In re Hathaway*, 71 N.Y. 238, 243–44 (1877); *Eliason v. Coleman*, 86 N.C. 235, 241 (1882).

1    already served for nearly three years.  Although the special prosecutors' duties

2    terminate upon performance, the positions are not transient or fleeting.

3          Third, the duties of the position must be more than incidental to the regular

4    operations of government.[5]  *See Sheboygan County v. Parker*, 70 U.S. (3 Wall.) 93, 96

5    (1865) (stating that the occupant of a position was not an officer because he did not

6    exercise "continuously, and as a part of the regular and permanent administration

7    of the government, any important public powers, trusts, or duties" (quoting

8    *Kennon*, 7 Ohio St. at 562–63)); *see also Kennon*, 7 Ohio St. at 556 (describing an office

9    as a "public duty, charge, and trust, conferred by a public authority, for public

10   purposes of a very weighty and important character" and "not merely transient,

11   occasional, or incidental" (cleaned up)).  Here, the special prosecutors' duties are

12   more than incidental to regular government operations because prosecution

13   generally is a core power of government and prosecution of contempt specifically

14   "vindicate[s] the authority of the court."  *Int'l Union, United Mine Workers of Am. v.*

15   *Bagwell*, 512 U.S. 821, 828 (1994) (citation omitted).

---

[5] Although this factor is not relevant to the duration of the office, its consideration is necessary to ensure against evasion of the Appointments Clause through the creation of temporary positions with the same powers as officers.  *See* 31 Op. O.L.C. at 113.

1      2.     Special Prosecutors Are Analogous to Independent Counsel

2      In light of the foregoing, we conclude that the special prosecutor position

3  here is analogous to the independent counsel position in *Morrison*.  First, the duties

4  of the special prosecutor and independent counsel extend beyond the person.  *See*

5  28 U.S.C. § 593(e) ("If a vacancy in office arises by reason of the resignation, death,

6  or removal of an independent counsel, the division of the court shall appoint an

7  independent counsel to complete the work.").  Second, both positions last for an

8  indefinite period of time, possibly years, and thus neither position is transient or

9  fleeting.  *See id.* § 596(b) (the office of independent counsel terminates when the

10  investigations and prosecutions "within the prosecutorial jurisdiction" of the

11  independent counsel "have been completed" or "substantially completed").

12  Third, both positions exercise federal prosecutorial power.[6]  *See id.* § 594(a)

13  (independent counsel shall have "full power and independent authority to

14  exercise all investigative and prosecutorial functions and powers of the

15  Department of Justice [and] the Attorney General").  Although the independent

16  counsel exercised greater authority than a special prosecutor, such as initiating

---

[6] The appointment order in this case grants the special prosecutors "the same power to investigate, gather evidence and present it to the Court as could any other government prosecutor."  App'x at 59.

1     prosecutions and prosecuting a wider range of crimes, *see id.* §§ 593(b)(3), 594(a)(9),

2     these differences go to the degree, not the nature, of the authority.

3         By contrast, the special prosecutor is less like the civil surgeon in *Germaine*

4     or the merchant appraiser in *Auffmordt*, which addressed positions that lacked

5     "any duration as to time" and duties that were narrowly limited, specialized, or

6     insignificant. *Auffmordt*, 137 U.S. at 327. The civil surgeon's sole duty was to make

7     "examination of pensioners" "when called on by the Commissioner of Pensions in

8     some special case." *Germaine*, 99 U.S. at 508, 512 (citation omitted); *see also id.* at

9     512 ("If Congress had passed a law requiring the commissioner to appoint a man

10     to furnish each agency with fuel at a price per ton fixed by law . . . he would have

11     as much claim to be an officer of the United States as the surgeons appointed under

12     this statute."). And the merchant appraiser's sole duty was to "examine and

13     appraise" merchandise "upon the request of the importer for a reappraisal."

14     *Auffmordt*, 137 U.S. at 312, 326; *see also id.* at 327 (merchant appraiser is "an expert

15     assistant . . . selected for the particular case . . . [and] for his special knowledge in

16     regard to the character and value of the particular goods in question").

17         The fact that the special prosecutor is generally appointed for a "particular

18     case" does not negate the differences between special prosecutors, on the one

1    hand, and civil surgeons and merchant appraisers, on the other.[7]  *Id.* at 327.  In

2    contrast to the discrete, short-lived tasks civil surgeons and merchant appraisers

3    undertake for any given case, the special prosecutor investigates and prosecutes a

4    criminal case, which can last for years and encompass a wide array of assignments,

5    such as executing search warrants, issuing subpoenas, granting immunity,

6    entering into plea bargains, and representing the government in court both at trial

7    and on appeal.  Also unlike civil surgeons and merchant appraisers, the special

8    prosecutor wields "the power to employ the full machinery of the state" to

9    vindicate the authority of the judiciary, which may include the awesome

10    responsibility of depriving an individual of his liberty.  *Young*, 481 U.S. at 814.

11         In sum, we hold that special prosecutors are officers under the

12    Appointments Clause because they are analogous to independent counsel: The

13    duties of the position extend beyond the person; although not permanent, the

---

[7] Although in this case the special prosecutors were charged with the prosecution of only a single defendant, special prosecutors could be appointed to investigate and prosecute multiple defendants for contempt arising from the same court orders.  For instance, the special prosecutors in *Young* prosecuted five defendants—two pled guilty, one was convicted of criminal contempt, and two were convicted of aiding and abetting that contempt.  481 U.S. at 790 n.1, 792.  Although in *Young* all defendants were prosecuted under the same case, a different multi-defendant prosecution could involve multiple cases.  *See* Fed. R. Crim. P. 14(a) (allowing the court to sever defendants for trial where joinder "appears to prejudice a defendant or the government").

1    position is continuing and may last for years; and the purpose of the position is to

2    exercise federal prosecutorial power.

3    B.    <u>Special Prosecutors Are Subject to Supervision by the Attorney General</u>

4    Having determined that special prosecutors are officers, we turn to

5    Donziger's first argument that his prosecution violated the Appointments Clause

6    because the special prosecutors were inferior officers who lacked supervision by a

7    principal officer.  As an initial matter, it is not clear that Donziger's argument

8    regarding supervision of the special prosecutors was timely under Federal Rule of

9    Criminal Procedure 12(b)(3)(A).[8]  But even assuming it was timely, it fails on the

10   merits.

11   The Appointments Clause differentiates between principal officers—who

12   must be appointed by the President and confirmed by the Senate—and inferior

13   officers, who may be appointed by "the President alone," "the Courts of Law," or

---

[8] In its findings of fact and conclusions of law, the district court determined that Donziger forfeited his supervision argument because he did not comply with Federal Rule of Criminal Procedure 12(b)(3)(A), which states that a "defect in instituting the prosecution" "must be raised by pretrial motion if the basis for the motion is then reasonably available."  Donziger's supervision argument was apparent as soon as the special prosecutors were appointed in July 2019, but he did not raise it before the February 27, 2020 deadline for filing pre-trial motions, waiting instead until the first day of trial.  We note, however, that the government may have itself forfeited the timeliness argument by failing to raise it in response to Donziger's motions to dismiss.  *See Eberhart v. United States*, 546 U.S. 12, 18 (2005) ("[F]ailure to object to untimely submissions entails forfeiture of the objection.").

1    "the Heads of Departments," as Congress may provide by law.  *Edmond*, 520 U.S.

2    at 660 (quoting U.S. Const. art. II, § 2, cl. 2).  Inferior officers "are officers whose

3    work is directed and supervised at some level" by principal officers.  *Id.* at 663.

4        The special prosecutors here are inferior officers appointed by "the Courts

5    of Law" under Rule 42, *see infra* Section II.C, and subject to the supervision of the

6    Attorney General of the United States, a principal officer.  The statutory scheme in

7    Chapter 31 of Title 28 gives the Attorney General broad authority to conduct and

8    to supervise all litigation involving the United States.  *See* 28 U.S.C. §§ 516, 517,

9    518, 519.  This includes the authority to supervise—and if necessary, to remove—

10   inferior officers.

11       As relevant here, section 518(b) states that "[w]hen the Attorney General

12   considers it in the interests of the United States, he may personally conduct and

13   argue any case . . . in which the United States is interested, or he may direct . . . any

14   officer of the Department of Justice to do so."  This section gives the Attorney

15   General the authority to replace special prosecutors, which is "a powerful tool for

16   control of an inferior," *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477,

510 (2010) (cleaned up), and to take control over contempt prosecutions.[9]  *See Booth v. Fletcher*, 101 F.2d 676, 681–82 (D.C. Cir. 1938) (explaining that Rev. Stat. § 359, a predecessor to 28 U.S.C. § 518(b), "gives [the Attorney General] broad, general powers intended to safeguard the interests of the United States in any case . . . . The Attorney General occupies no subordinate position when he elects to enter such a proceeding . . . . On the contrary, the law contemplates that—consistent with the proper interests of private litigants and, so far as concerns the interests of the United States—he shall have full control of the prosecution or defense of the case").  Indeed, at oral argument, both the special prosecutors and the DOJ acknowledged that the Attorney General could replace the special prosecutors. *See* Oral Argument at 36:37–37:03, 47:03–49:47, 55:17–55:33.

In addition, section 519 states that "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation to which the United States . . . is a party, and shall direct all United States attorneys [and] assistant United States

---

[9] This power is reinforced by the Attorney General's authority to conduct and supervise litigation in which the United States is a party, which necessarily encompasses the authority to decide which inferior officer represents the United States in court and the ability to replace or remove inferior officers reporting to him. *See* 28 U.S.C. § 516 ("[T]he conduct of litigation in which the United States . . . is a party . . . is reserved to officers of the Department of Justice, under the direction of the Attorney General."); *id.* § 519 ("[T]he Attorney General . . . shall direct all United States attorneys [and] assistant United States attorneys . . . in the discharge of their respective duties."); *id.* § 542(b) ("Each assistant United States attorney is subject to removal by the Attorney General.").

1    attorneys . . . in the discharge of their respective duties."  This section is comprised

2    of two separate grants of authority to the Attorney General: (1) to "supervise all

3    litigation to which the United States . . . is a party" and (2) to "direct all United

4    States attorneys [and] assistant United States attorneys."  *Id*.  The first grant of

5    authority is independent of the second, and thus the Attorney General's authority

6    to supervise "all litigation to which the United States . . . is a party" does not

7    depend on whether the attorney representing the United States is a United States

8    attorney or an assistant United States attorney—indeed, it does not depend on the

9    identity of the attorney at all.  *Id*.  This section thus gives the Attorney General the

10    authority to supervise all criminal contempt prosecutions.[10]  *See Young*, 481 U.S. at

---

[10] The dissent asserts that *Providence Journal* held that "*Young* is incompatible with direction of the contempt proceeding by the Attorney General."  Dissent at 15.  That is incorrect. *Providence Journal* instead reconciled the requirement in 28 U.S.C. § 516 and § 547 that litigation involving the United States must be conducted by a "Government attorney" with *Young*'s holding that a "private attorney" could prosecute a criminal contempt charge.  *Providence J. Co.*, 485 U.S. at 704–05.  In doing so, it relied on the "[e]xcept as otherwise authorized by law" proviso in both sections.  *Id*.  Even assuming section 516 does not apply to judicially initiated contempt proceedings, sections 518(b) and 519 are not implicated by *Providence Journal*.  As *Providence Journal* noted, "by way of vivid contrast" to sections 516 and 547, section 518 does not contain the "[e]xcept as otherwise authorized by law" proviso.  *Id*. at 705.  And although section 519 does contain the proviso, contempt proceedings fall within that proviso only to the limited extent that the Attorney General does not initiate the contempt prosecution or choose the special prosecutor. In all other respects, they do not conflict with or require an exception to the Attorney General's authority to supervise contempt prosecutions.

1    804 ("Private attorneys appointed to prosecute a criminal contempt action

2    represent the United States.").

3        In light of the Attorney General's broad statutory authority to supervise all

4    litigation involving the United States, it is clear that the special prosecutors are

5    subject to the supervision of the Attorney General.  Whether they were in fact

6    supervised is beside the point.  A principal officer "need not review every decision

7    of the [inferior officer].  What matters is that the [principal officer] have the

8    discretion to review decisions rendered by [the inferior officer]."  *United States v.*

9    *Arthrex, Inc.*, 141 S. Ct. 1970, 1988 (2021).  The Constitution does not mandate a

10   minimum level of supervisory activity over the work of inferior officers; rather, it

11   requires as a matter of structural authority that inferior officers be subject to the

12   supervision and direction of principal officers.

13       We thus reject Donziger's argument that the special prosecutors were

14   unsupervised as a matter of fact.[11]  He points to (1) an email from the DOJ before

15   trial declining to intervene in the prosecution and (2) the DOJ's filing of a separate

16   amicus brief in this appeal rather than directing the special prosecutors to take the

---

[11] Donziger concedes that the Attorney General has statutory authority to exercise direction over this case.  Reply Br. 24.

1  DOJ's position.[12]  Neither changes the fact that the Attorney General had statutory

2  authority to supervise the special prosecutors, bringing them under the

3  supervision of a principal officer.

4      Nor does the Attorney General's statutory authority to supervise special

5  prosecutors abrogate the judicial power described in *Young* to punish contempt.

6  The only judicial powers described in *Young* are the court's authority to *initiate*

7  prosecution and to appoint a special prosecutor if the executive declines to

8  prosecute—it does not extend the judicial power beyond that point.  *See, e.g.,*

9  *Young*, 481 U.S. at 795 ("[T]he *initiation* of contempt proceedings to punish

10  disobedience to court orders is a part of the judicial function." (emphasis added));

11  *id.* at 800–01 ("[C]ourts have long had, and must continue to have, the authority to

12  appoint private attorneys to *initiate* such proceedings when the need arises."

13  (emphasis added)).   Indeed, *Young* recognized that once the prosecution

14  commenced, the special prosecutor would make critical decisions "outside the

---

[12] Donziger also argues that the special prosecutors denied that they were subject to supervision in their opposition to Donziger's post-trial motion to dismiss.  As the district court correctly noted, although the special prosecutors made a misguided legal argument, it was "in no way whatsoever" "a dispositive admission that [the special prosecutors] were not subject to supervision and direction prior to trial." Sp. App'x at 259 n.12 (cleaned up).  In any event, even if the special prosecutors had denied that they were subject to supervision, that would still not vitiate the Attorney General's statutory authority to supervise special prosecutors.

1    supervision of the court," such as who should be targets of investigation, who

2    should be granted immunity, and whether to enter into plea bargains.[13] *Id*. at 807.

3        The Attorney General cannot prevent a court from initiating a contempt

4    prosecution or appointing a special prosecutor—his authority to supervise special

5    prosecutors starts only after the court has exercised these powers. The fact that

---

[13] The dissent asserts based on certain language in *Young* that courts must have "an independent means to prosecute criminal contempt" that cannot be interfered with by the executive. Dissent at 13. But *Young* did not expand the judicial power beyond initiation and appointment. For example, although the Court observed that "the attributes which inhere in [the contempt] power and are inseparable from it can neither be abrogated nor rendered practically inoperative," *Young*, 481 U.S. at 799 (citation omitted), the Court concluded in the very next sentence that prosecutions of contempt both in and out of court "proceed at the *instigation* of the court." *Id*. (emphasis added). Similarly, after saying "[i]f the Judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that Branch declined prosecution," the Court explains in the following sentence that "[t]he logic of this rationale" is that a court should appoint a special prosecutor only if the appropriate executive agency declines to prosecute. *Id*. at 801. The Court also cabined the scope of its broad statement about inter-branch dependency in an earlier portion of the opinion: "Courts cannot be at the mercy of another Branch in deciding whether such proceedings should be *initiated*. The *ability to appoint* a private attorney to prosecute a contempt action satisfies the need for an independent means of self-protection." *Id*. at 796 (emphases added).

The dissent states that the judicial power described by *Young* is "ineffectual" and "strange" because it is useful only "when the executive branch actually *wants* to prosecute the contempt but declines to do so solely for lack of resources." Dissent at 13. But this understates the power blessed by the Court in *Young*. The ability to initiate the process and to appoint a prosecutor gives the judiciary some ability to protect its interests. Although the executive could terminate a contempt prosecution initiated by the judiciary, that would entail greater political accountability than a decision not to prosecute in the first place, and the judiciary could further respond by initiating a new prosecution and appointing another special prosecutor. *See* Oral Argument at 49:30–49:50, 57:00–58:20. Although this would not necessarily ensure prosecution of a contemnor, it would provide a level of political accountability sufficient to fulfill the rationale of *Young*.

1    the Attorney General has the power to direct and even remove special prosecutors

2    does not negate the court's power to appoint them, and the fact that he has

3    authority to take control of and even to terminate the contempt prosecution does

4    not negate the court's authority to initiate one.

5          We thus reject Donziger's first Appointments Clause argument because the

6    Attorney General has the statutory authority to supervise the special prosecutors.

7    C.    <u>Donziger's Rule 42(a) Challenge Does Not Satisfy Plain-Error Review</u>

8          For the first time on appeal, Donziger argues that his prosecution was

9    unconstitutional because the special prosecutors were appointed under Federal

10    Rule of Criminal Procedure 42(a), which did not satisfy the Appointments Clause

11    requirement that "Congress . . . by Law vest the Appointment."  U.S. Const. art. II,

12    § 2, cl. 2.  We review for plain error because Donziger did not make this argument

13    below.[14]  *See United States v. Eldridge*, 2 F.4th 27, 36 (2d Cir. 2021); *see also Yakus v.*

---

[14] The dissent asserts that Donziger's related, but distinct, Appointments Clause argument that the special prosecutors were unsupervised inferior officers in his motions to dismiss sufficiently raised the Rule 42(a) issue for review.  *See* Dissent at 4–5.  But that is a stretch. Donziger never argued below that Rule 42(a) is unconstitutional.  In fact, he conceded this failure at oral argument.  *See* Oral Argument at 19:37–43 ("We did not raise [the Rule 42 argument] specifically."); *see also In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132–33 (2d Cir. 2008) (concluding that an argument made below merely "resembling" the one presented on appeal was not sufficient to preserve the issue).  The dissent also suggests that Donziger had no reason to raise the Rule 42(a) argument below until the district court rejected his supervision argument.  *See* Dissent at 5–6.  We disagree.  First, Donziger never argued that the special prosecutors were

24

1    *United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar

2    . . . than that a constitutional right may be forfeited in criminal as well as civil cases

3    by the failure to make timely assertion of the right before a tribunal having

4    jurisdiction to determine it."); *Freytag*, 501 U.S. at 893–94 (Scalia, *J.*, concurring)

5    ("Appointments Clause claims, and other structural constitutional claims, have no

6    special entitlement to review.  A party forfeits the right to advance on appeal a

7    nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.").

8           "[T]he defendant has the burden of establishing each of the four

9    requirements for plain-error relief," one of which is that the "error must be plain."

10   *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021).  An error is plain if it is "clear"

11   or "obvious," *United States v. Olano*, 507 U.S. 725, 734 (1993) (citation omitted), or

12   "if the ruling was contrary to law that was clearly established by the time of the

13   appeal," *United States v. Polouizzi*, 564 F.3d 142, 156 (2d Cir. 2009) (citation omitted).

14          There is no plain error here.  First, it is not clear that the phrase "Congress

15   . . . by Law" requires bicameral approval and presentment, and that it does not

---

principal officers who should have been appointed by the President and confirmed by the
Senate—his position throughout the case has been that they are inferior officers.  We thus see no
reason why he couldn't have argued below that the special prosecutors were inferior officers who
were not only inadequately supervised, but also improperly appointed under Rule 42(a). Second,
after the district court rejected Donziger's supervision argument, he could have—but didn't—
raise this Rule 42(a) argument in his motion for a new trial.

1    encompass Rule 42, which was enacted under the Rules Enabling Act, which gives

2    Congress an opportunity to modify or reject rules before their enactment.  *See* 28

3    U.S.C. § 2074.

4        Second, even if we might ultimately conclude that the appointment of a

5    special prosecutor under Rule 42 violates the Appointments Clause, any error by

6    the district court would not be "clear" or "obvious" in light of Supreme Court

7    precedent.  *Young* held that "courts possess inherent authority to initiate contempt

8    proceedings for disobedience to their orders, authority which necessarily

9    encompasses the ability to appoint a private attorney to prosecute the contempt."

10   481 U.S. at 793.  Even if we were to agree that *Young* is in some tension with the

11   Court's more recent Appointments Clause and separation-of-powers

12   jurisprudence, the district court did not plainly err by following directly applicable

13   Supreme Court precedent.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a

14   precedent of this Court has direct application in a case, yet appears to rest on

15   reasons rejected in some other line of decisions, the Court of Appeals should

16   follow the case which directly controls, leaving to this Court the prerogative of

17   overruling its own decisions." (citation omitted)).

1    The dissent contends that the district court plainly erred because

2    prosecution is solely an executive function, and "the 'executive Power'—all of it—

3    is 'vested in a President.'"  *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020)

4    (citation omitted).  But the dissent never seriously argues, nor could it, that the

5    judicial appointment of a prosecutor would violate the separation of powers.  *See*

6    U.S. Const. art. II, § 2, cl. 2 ("Congress may by Law vest the Appointment of such

7    inferior Officers . . . in the Courts of Law."); *see also* 28 U.S.C. § 546(d) (allowing

8    the district court to appoint an interim United States attorney in certain

9    circumstances).  And in Donziger's appeal, it is precisely the appointment of

10   special prosecutors that is at issue.

11   Instead, the dissent focuses almost exclusively on the initiation of the

12   prosecution by the district court.  But Donziger does not argue on appeal that his

13   conviction should be overturned because the district court's initiation of his

14   prosecution violated separation of powers.  That argument would conflict not only

15   with *Young*, but also with well-established precedent recognizing the judiciary's

16   ability to punish contempts.  *See Michaelson v. United States*, 266 U.S. 42, 65 (1924)

17   ("That the power to punish for contempts is inherent in all courts, has been many

18   times decided and may be regarded as settled law.").

1    The dissent would hold that Rule 42 is unconstitutional, as are all judicially-

2    initiated contempt prosecutions because they violate separation-of-powers

3    principles.[15] *See* Dissent at 16–18.  Supreme Court precedent does not support that

4    extraordinary conclusion.  The dissent accuses us of not "faithfully apply[ing]

5    *Young*," Dissent at 16, but what is clear from that case is that the Supreme Court

6    explicitly rejected the dissent's position.  *See Young*, 481 U.S. at 797–801 (rejecting

7    petitioners' argument that out-of-court contempt prosecutions may be initiated

8    only by the executive branch).

9    The district court reasonably relied on *Young*, and we conclude that it was

10   not plain error to appoint the special prosecutors under Rule 42(a).

---

[15] The dissent distinguishes between in-court contempts that interfere with the judicial process and can be punished summarily because they occur in the presence of the judge and out-of-court contempts involving violations of judicial orders and judgments that require adversarial proceedings.  *See* Dissent at 17 n.10.  *Young* concluded that "while the prosecution of in-court and out-of-court contempts must proceed in a different manner, they both proceed at the instigation of the court" and both are inherently part of the judicial power.  *Young*, 481 U.S. at 799; *see also id.* at 797–801; *Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873) ("The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, *and* to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." (emphasis added)); *Bessette v. W.B. Conkey Co.*, 194 U.S. 324, 333 (1904) (judicial power to punish contempt "has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary exercise of its duties, *and* to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors" (emphasis added)).

1    D.    The District Court Did Not Abuse Its Discretion by Initiating the Prosecution

2          Finally, Donziger argues that by initiating a criminal contempt prosecution

3    against him, the district court failed to adhere to the "principle that only the least

4    possible power adequate to the end proposed should be used in contempt cases,"

5    and he appeals to our "supervisory authority" to overturn the conviction on that

6    basis.[16] *Young*, 481 U.S. at 801, 808–09 (cleaned up).  We review the district court's

7    decision to initiate contempt proceedings under a heightened abuse-of-discretion

8    standard.  *See Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*, 347 F.3d 36, 38 (2d

9    Cir. 2003) (holding that a judge's decision to issue summary criminal contempt

10   orders are "reviewed on appeal for abuse of discretion, but because of the

11   formidable and potentially harmful nature of the contempt power, this review is

12   more rigorous than in other contexts" (cleaned up)); *see also* 18 U.S.C. § 401 ("A

13   court of the United States shall have power to punish by fine or imprisonment, or

14   both, *at its discretion*, such contempt of its authority." (emphasis added)).

15         First, Donziger does not deny that he repeatedly refused to obey court

16   orders over a period of years.  The district court's findings of fact and conclusions

---

[16] We note the Supreme Court's recent observation that "[s]ome jurists have questioned [the Supreme Court's] supervisory authority over lower courts."  *United States v. Tsarnaev*, 142 S. Ct. 1024, 1035 n.1 (2022); *see also id*. at 1041 (Barrett, *J.*, concurring) (expressing "skepticism that the courts of appeals possess such supervisory power").

1    of law describe Donziger's behavior as an "extensive and continuous laundry list

2    of past violations of [the district court's] orders" and as "years of noncompliance."

3    Sp. App'x at 243–44 (emphasis omitted).

4         Second, the district court did not abuse its discretion by punishing Donziger

5    for his past disobedience of court orders, even if it had since been cured. Criminal

6    contempt punishes "retrospectively for a completed act of disobedience, such that

7    the contemnor cannot avoid or abbreviate the confinement through later

8    compliance." *Bagwell*, 512 U.S. at 828–29 (cleaned up). Unlike civil contempt,

9    which is aimed at "compel[ling] future compliance with a court order" and is

10   "remedial[] and for the benefit of the complainant," criminal contempt is

11   "punitive" and meant to "vindicate the authority of the court." *Id.* at 827–28. Here,

12   "the end proposed" was not compliance with court orders but punishment for past

13   disobedience and vindication of the court's authority. It is therefore beside the

14   point that Donziger eventually complied with most of the court orders underlying

15   his criminal contempt conviction.

16        Third, it is not an abuse of discretion for a court to punish a contemnor who

17   disobeys court orders to obtain appellate review. *See Del Carmen Montan v. Am.*

18   *Airlines, Inc.*, 490 F.3d 99, 104 (2d Cir. 2007) ("[T]he remedy of the party witness

1    wishing to appeal [a court's decision to compel compliance with a subpoena or

2    deny a motion to quash a subpoena] is to refuse to answer and subject himself to

3    criminal contempt." (citation omitted)).

4          In any event, Donziger's assertion that he disobeyed the court's discovery

5    orders to appeal them is dubious.  When he appealed the civil contempt orders

6    and had the opportunity to challenge two of the three discovery orders that were

7    the basis for his criminal contempt conviction, he failed to do so—he challenged

8    only one contempt finding, which was not part of his criminal conviction.  *See*

9    *Chevron Corp. v. Donziger*, 990 F.3d 191, 206 (2d Cir. 2021).

10          We thus conclude that the district court did not abuse its discretion by

11    initiating a contempt proceeding against Donziger.[17]

12                              **III. CONCLUSION**

13          For the reasons set forth above, the district court's judgment is AFFIRMED.

---

[17] Donziger mentions in passing various other objections to his prosecution—namely, he was denied his right to a grand jury and a petit jury, Judge Kaplan picked Judge Preska to preside over the criminal case without recusing himself, and the private prosecutor had ties to Chevron. These arguments were waived because they were "not sufficiently argued in the briefs," and we decline to address them.  *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).